ORAL E. HALL, administratrix of estate of ROBERT C. HALL, deceased, appellant, v. TOWN OF KEOTA, a municipal corporation, and IOWA SOUTHERN UTILITIES COMPANY of Delaware, a corporation, appellees.

WILLIAM H. HALL, appellant, v. TOWN OF KEOTA et al., appellees.

Nos. 48955
48956.

(Reported in 79 N.W.2d 784)

132

December 11, 1956.

Moon, Barnes & Schlegel, of Ottumwa, for appellant.

Edmund D. Morrison, Jr., of Washington, and B. J. Byrne, of Keota, for Town of Keota, appellee.

Valentine & Greenleaf, of Centerville, for Iowa Southern Utilities Company of Delaware, appellee.

THOMPSON, C. J.—This opinion covers the appeals in two cases, Nos. 48955 and 48956. We have for consideration only the correctness or error of the rulings of the trial court in granting motions to dismiss as to each of the three counts in the petition in each case. The two petitions were based upon the same pleaded state of facts, and are identical except that in No. 48955 the suit is brought by the father of Robert C. Hall, a minor at the time of his death, while in No. 48956 the action is by the administratrix of the Robert C. Hall estate. While the petitions name two defendants, the only one involved in the rulings of the trial court and in this appeal is the Town of Keota, the other defendant having answered and the cases apparently being at issue as to it. The motions to dismiss, filed by the defendant Town of Keota, were identical in each case. Accordingly this opinion will serve as our decision upon the appeal in both cases.

The facts as shown by the petitions, and which under familiar rules we must consider as true for the purposes of our discussion so far as they are well pleaded, are that on April 1, 1955, Robert C. Hall, a boy then just under five years of age, was in the vicinity of a pole located on the northwest corner of

Broadway and Fulton Streets in the defendant town, when the pole fell upon him, inflicting injuries from which he died almost immediately. The pole is alleged to have been of heavy cast iron. It had formerly been used as a light pole by the defendant Iowa Southern Utilities Company; but some time before the company had installed a new system and the town had for several years been using it as a traffic-sign device. It bore a stop sign and a "No U-Turn" sign. It is pleaded that it was located on the sidewalk at the street corner above named.

Count I of the petitions alleges that said pole was not kept in good repair and safe condition; that it was not securely fastened to the sidewalk, but the bolts and nuts used to anchor it had become worn and rusted so that they were useless; and the pole in such condition became a trap and an inherently dangerous instrumentality. It is further pleaded that the defendant knew or in the exercise of reasonable care should have known of the dangerous and unsafe condition of the pole but did nothing to correct or repair it. Failure of the town to keep its public highways and streets in repair and free from nuisances, in violation of section 389.12 of the Code of 1954, is alleged.

Count II repleads the facts above related, and further alleges that the maintenance of the pole in its defective and dangerous condition constituted a nuisance, rendering the town liable for damages for the injury caused by it.

Count III pleads the same facts, but instead of specific acts of negligence alleges the pole was an instrumentality under the exclusive control of the defendants and relies upon res ipsa loquitur.

The defendant Town of Keota filed motions to dismiss attacking each of the three counts. The most important contention, made in each motion, is that in maintaining the pole it was acting in a governmental capacity, was in the exercise of its police power and was providing for the general public benefit and for the safety and protection of its citizens; and as a matter of law was not liable for the failure of its employees to keep said device free from danger.

The motion addressed to Count II also asserts that a pole such as the one in question does not come within the common-law or statutory definition or classification of a nuisance. In its mo-

tion attacking Count III the town, relying again chiefly upon the claim of governmental immunity, also alleges that the pole was not in the exclusive control of the municipality, but was open to the "interference, control, and contact" of all passers-by. The motions were sustained upon all grounds; the plaintiffs did not plead over within the designated time, and the rulings became final adjudications under R.C.P. 86.

I. The question of the extent of governmental immunity from liability for torts is a difficult one. That it has perplexed this court for many years is apparent from a study of the many decisions found in our reports, some of which seem to support the contentions of the appellants, and some those of the appellees. The briefs filed herein by the able counsel for the respective parties are replete with cases in which we have announced the rule that a city or town may not be held to respond in damages for injuries inflicted while it is performing a purely governmental function; or in which we have avoided the rule and held the municipality may be liable. The earlier cases generally seem to have stated the rule and adhered to it without much discussion or analysis, although even in these there are exceptions in which liability has been found. An attempt to analyze all of the cases bearing on this subject would necessitate an opinion of such length that its value would be lost in a welter of words. We think that the governing principle in this class of cases has emerged in our later cases, that it is right in theory and should be followed. This necessitates a reversal of the rulings of the trial court.

It is clear that the maintenance and repair of the streets is a governmental function, rather than a proprietary one. It is not contended otherwise by the appellants. On the other hand, the appellee does not argue that a sidewalk is not a part of the street, and we hold that it is such. "When speaking of a street as a place for public travel the term includes both the roadway for vehicles and the sidewalk for pedestrians." Gates v. City Council of Bloomfield, 243 Iowa 1, 12, 50 N.W.2d 578, 584. See also Gallaher v. City of Jefferson, 125 Iowa 324, 330, 101 N.W. 124, 126; 63 C.J.S., Municipal Corporations, section 794(a); 25 Am. Jur., Highways, section 406; Latimer v. Walgreen Drug Company of Texas, Tex. Civ. App., 233 S.W.2d 209, 211, 212;

Le May v. City of Oconto, 229 Wis. 65, 281 N.W. 688, 689, 118 A.L.R. 1019, 1021; 40 Words and Phrases, Street, Perm. Ed., pages 277 to 281.

Accordingly, the duty of the town to keep the sidewalks in a safe condition is identical with its duty to so maintain the roadway proper. We have in the recent case of Florey v. City of Burlington, 247 Iowa 316, 73 N.W.2d 770, discussed and determined the liability of a city or town under section 389.12, Code of Iowa 1954, and related statutes found in the same chapter. Section 389.12 is herewith set out:

"They shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

The Florey case deals with parks; but since the same statute applies also to streets, and we have held above that a sidewalk is a part of the street, the same rules must apply. The reasoning of the Florey case is that if a failure to perform the statutory duty imposed by section 389.12 results in injury to one lawfully using the service offered by the municipality, liability results, notwithstanding that the function involved is a purely governmental one. The case also holds that there is liability apart from the specific statute above set forth, quoting (page 321 of 247 Iowa) Judge Dillon's statement in Soper v. Henry County, 26 Iowa 264, 268. We think, however, that section 389.12, supra, is but a more specific delegation of power to cities and towns over their streets. It "invests" them, by statute, with " 'supervision and control over their streets * * *' " and brings them within the terms of the rule laid down by Judge Dillon.

No matter what may have been said in previous cases—and it must be conceded there is language in several of them, and a specific holding on the facts in a few which tend to support the position of the Town of Keota—the Florey case is our latest pronouncement and we adhere to it. It is supported by many previous decisions of this court. Its holding is that a failure of a city or town to keep its streets, or parks, "in repair and free from nuisances" destroys the governmental immunity of the municipality and renders it liable to respond in damages if a

user is injured because of such failure and without fault on his part.

In Leonard v. Mel Foster Co., Inc., 244 Iowa 1319, 1324, 60 N.W.2d 532, 535, we referred to section 389.12, supra, and said that a city, or town, has a duty to keep its streets in reasonably safe condition. In the cited case an excavation had been made and left unguarded in the parking, which we held was a part of the street, and that the general governmental immunity of the City of Davenport did not protect it from liability. It is true we there said, at page 1325 of 244 Iowa, page 536 of 60 N.W.2d, that "This case is not like those in which a pedestrian is injured by contact with a light pole, fire hydrant, meter box or other structure which one may expect to find in a parking strip." Obviously the reference here is to structures properly maintained. The language does not aid the appellee.

We also said in the Leonard case, supra, at page 1325 of 244 Iowa, page 536 of 60 N.W.2d: "Further, we think the jury could properly find this unguarded, unlighted trench was in such close proximity to the paved portion of the street as to render the street unsafe for those using it in the ordinary way." This language is significant in the instant case, where the traffic-sign pole was, according to the petitions, not only in "close proximity" to the sidewalk, but actually upon it. We are unable to draw a distinction between a trench in the parking and an unsecured, heavy, upright pole upon the sidewalk, when we are considering the question of a failure of a city or town to keep its streets in repair. Each, under the authorities, is in a part of the street, and each is dangerous if permitted to become so: the trench by being unguarded, the pole by becoming so insecurely fastened that it falls upon a passer-by.

Mardis v. City of Des Moines, 240 Iowa 105, 34 N.W.2d 620, is cited by the appellee as sustaining its position. The basis of the suit was a collision between a city-owned truck, being used by city employees in carting away rubbish swept from the streets, and an automobile in which the plaintiff was riding. We held that the city employees were engaged in a governmental function and there was no liability. But in so holding, we said (page 115 of 240 Iowa, page 626 of 34 N.W.2d):

"We are satisfied that in obeying the law [requiring that the

streets be kept in safe condition] the manner of its performance is a governmental and not a ministerial function. *It is the duty of the municipality to maintain its streets in good condition, and under the general holdings of this court the municipality is responsible for the results,* but no statute or rule prescribes the manner in which that result shall be accomplished." (Italics supplied.) We then quoted with approval from City of Wooster v. Arbenz, 116 Ohio St. 281, 290, 156 N.E. 210, 213, 52 A. L. R. 518, to the same effect.

In Jones v. City of Sioux City, 185 Iowa 1178, 170 N.W. 445, 10 A. L. R. 474, plaintiff's decedent had been struck and killed by an automobile owned by the city and driven by an employee. Negligence specified against the city was that the car was being driven at a high and reckless speed, and that the surface of the street was in a rough and uneven condition and such negligence contributed to the injury. A verdict was directed for the city. This court reversed, saying as to the alleged negligence based upon speed of the city's automobile that it was not shown what use was being made of the car at the time, and the burden was upon the city to show that its use was in a governmental function. It was implied, however, that if a governmental function did appear, this issue should be withdrawn from the jury. But as to the negligence specified because of the condition of the street, we said (page 1189 of 185 Iowa, page 449 of 170 N.W.):

"Appellant contends that, even though the act in question was governmental, the concurrent negligence in permitting the defective condition of the street should have been submitted to the jury. Under the evidence heretofore referred to, we think the court should have submitted to the jury the issue as to the defective condition of the street. The duty of the city with reference to its streets is a corporate duty. [Citing authorities.]"

Upon a retrial, verdict being again directed for the city, we again reversed, for the same reason. Jones v. City of Sioux City, 192 Iowa 99, 182 N.W. 644.

In Duffy v. City of Dubuque, 63 Iowa 171, 18 N.W. 900, 50 Am. Rep. 743, the city was held liable for negligence in permitting a section of a roof, which had been removed from an ad-

jacent building, to stand upon the sidewalk, from where it fell upon and injured the plaintiff. A billboard permitted to stand upon the sidewalk so that it blew over and injured a pedestrian passing by was held sufficient to authorize recovery in Cason v. City of Ottumwa, 102 Iowa 99, 71 N.W. 192. Another billboard case is Bliven v. City of Sioux City, 85 Iowa 346, 52 N.W. 246. Here is found language peculiarly appropriate to the case at bar. The billboard in question stood about one and one-half feet from the sidewalk, between it and the adjoining property line. It fell upon and injured the plaintiff, and recovery for damages was had. After stating the duty of the city to keep its streets and sidewalks open, in repair, free from nuisance and in a reasonably safe condition, citing section 527 of the Code of 1873, which is in substance our present section 389.12, we said (page 351 of 85 Iowa, page 246 of 52 N.W.) :

"This duty extends, not merely to the surface of the street or walk, *but to those things within its control which endanger the safety of those using the street or walk properly. * * * That condition may be due to improper construction, to poor materials, or other causes. It may be due to the presence of something which is a menace to the safety of the users of the way, as well as to imperfect construction or the absence of needed labor or material.*" (Italics supplied.)

Factually, these billboard cases seem exactly in point with the one before us. An injury sustained from an improperly supported billboard upon or adjacent to the sidewalk cannot be distinguished from an injury suffered from a traffic signpost, likewise upon the sidewalk and likewise defective in its supports.

We have referred above to Judge Dillon's pronouncement in Soper v. Henry County, supra, 26 Iowa 264, 268. It was there said that when cities or towns are invested by their organic acts or by statute with supervision and control over their streets and with the power to levy taxes or otherwise raise revenue to improve and repair them, they are liable, without any statute specifically making them so, for injuries caused by unsafe and defective streets. Chapter 389 of the Code of 1954 gives cities and towns the exact powers defined by Judge Dillon. Section 389.1 gives

140

them power to establish, open, improve and repair streets. Following sections grant the right to levy assessments for the cost of such works; and section 389.12 imposes the specific duty to keep the streets in repair and free from nuisances. This section does no more than emphasize and clarify a duty which would have existed without it.

Many of the cases cited by the defendant town involve acts of negligence by employees of cities or towns in performing governmental functions, and properly hold no liability of the municipality exists. This is so, although the negligent acts of the employees were committed upon the streets, even if in constructing or repairing them. The liability of the city or town for failure to keep its streets in repair, safe and free from nuisance does not extend to the manner in which it performs its duty. It is liable only for the ultimate results—injuries from defects in the streets which it has not used due care in preventing.

Two of the cases cited by the defendant require special consideration. Smith v. City of Iowa City, 213 Iowa 391, 239 N.W. 29, and Hensley v. Incorporated Town of Gowrie, 203 Iowa 388, 212 N.W. 714, each involved maintenance of public parks and devices or structures therein. In the Smith case the injury resulted from what was claimed to be a defective teeter-totter and merry-go-round; in the Hensley case from a water fountain. While there is language in the Hensley case which might be construed as meaning that there was no liability because the boy who was injured should not have been playing upon the fountain, in fairness it must be said that the real basis for the holding in each of the Smith and Hensley cases was that a governmental function was involved and the municipality was not liable for failure to maintain its parks in repair and in a safe condition. These holdings cannot be reconciled with Florey v. City of Burlington, supra, which we are satisfied expresses the correct principle of law. Smith v. City of Iowa City and Hensley v. Town of Gowrie, both supra, are overruled in so far as they are in conflict with Florey v. City of Burlington, supra, and with the rules laid down in the case at bar.

II. The discussion above in Division I demonstrates that the trial court was in error in granting the motion to dismiss as to Count I of the petitions. Count II, after repeating the

factual allegations, in each of the two cases attempted to plead that the failure of the town to keep the traffic-sign pole in repair created a nuisance. One ground of the motion to dismiss as to this count was that the pole was not a nuisance per se and does not come within the common-law definition of a nuisance or the statutory classification thereof. While the other grounds of the motion as to Count II of the petitions were in effect the same as those attacking Count I, we think the motions were properly sustained as to Count II, because the petitions do not show that a nuisance existed. We have a statutory classification of nuisances in Iowa, and the failure of a municipality to keep its streets in repair and safe for travel does not come within any of the enumerated classes. Section 657.2, Code of 1954. Nor is it within the definition of nuisance given by our statute section 657.1, Code of 1954, except possibly under a strained construction. It is probably not of great importance in the case at bar whether the plaintiffs are held to have pleaded a case on the question of the town's negligence, as we have said they have done in Count I of their petitions, or whether they are also entitled to a ruling that they have made proper allegations showing the maintenance of a nuisance, as they have attempted in Count II. But the matter is before us for decision, and the trial court must be advised whether it must submit Count II also if the pleaded facts are proven.

We think a distinction must be drawn between mere failures to keep the streets, parks, etc., in proper state of repair, when a liability may result because of negligence, and, on the other hand, uses of the streets, or parks, resulting in injury to persons lawfully using them, which have no connection with the purposes for which they were intended. Thus, in Wheeler v. City of Fort Dodge, 131 Iowa 566, 108 N.W. 1057, 9 L. R. A., N. S., 146, a case much discussed by both contestants here, the injury resulted from a "slide-for-life" wire which was stretched across the street and from which a performer fell, striking the plaintiff. This had no proper relation to the intended use of the street and was held to be a nuisance. Thus awnings and windows projecting into the street from adjacent buildings, a covered viaduct running from the upper stories of buildings on opposite sides of the street, a

142

rope stretched across the street, a dangerous boiler in an areaway under a street, and limbs falling from overhanging trees have all been held to be nuisances, the cases so deciding being cited and relied upon in Wheeler v. Fort Dodge, supra, at pages 570 and 571 of 131 Iowa, pages 1058 and 1059 of 108 N.W. Permitting the parking of buses and the establishment of loading zones in the street in front of plaintiff's place of business was held to be a nuisance, in Gates v. City of Bloomfield, 243 Iowa 671, 674, 675, 53 N.W.2d 279, 280, 281. In each of these cases there was a use of the street or an obstruction in or over it foreign to its primary purpose as a means of travel.

But in the case at bar the traffic sign was directly connected with the intended use of the street. It was a means of regulating travel upon it. True, as we have pointed out in Division I above, the town owed a duty to keep it in a safe condition. It was a part of the street and sidewalk and should have been kept in repair. But we think failure to do so did not amount to maintenance of a nuisance. It is often difficult to distinguish between negligence and nuisance. Each arises from a failure to perform a duty owed.

We think the true distinction so far as our present situation is concerned is pointed out by the Missouri Supreme Court in Brown v. City of Craig, 350 Mo. 836, 840, 168 S.W.2d 1080, 1082, where, quoting from Pearson v. Kansas City, 331 Mo. 885, 55 S.W.2d 485, 489, it is said: "That to constitute a nuisance 'there must be a degree of danger (likely to result in damage) inherent in the thing itself, beyond that arising from mere failure to exercise ordinary care in its use'." The cited case involved an action for the wrongful death of plaintiff's husband while confined in the city jail when it burned. It was held the jail was a lawful structure and the failure to maintain it properly and free from danger of fire was at most negligence rather than a nuisance. The parallel with the situation in the instant case is exact. The traffic post was a lawful structure lawfully on the sidewalk. Failure to maintain it in a safe condition, if there was such a failure, was no more than negligence; it was not a nuisance. It follows that the court properly sustained that ground of the motions attacking Count II of the petitions which alleged failure to plead a nuisance.

III. The motion attacking Count III of the petitions

raised the same questions of governmental immunity previously discussed in our Division I; and in addition alleged that it appeared from the petitions that the pole was in the public street "and not in the exclusive care, custody and control of the defendant Town of Keota, but open to the interference, control, and contact of all passers-by. It is obvious that a city cannot place a guard by each of its light poles to retain exclusive control at all times." Since the trial court also granted the motion to dismiss on all grounds as to Count III of each petition, we must consider whether the pleaded facts make a prima-facie showing of res ipsa loquitur. As indicated by its motion to dismiss, the defendant town contends the doctrine does not apply, because other persons using the street might interfere with the pole or make some contact with it. If they did so, they would be trespassers. The record, which is here only the pleadings and the rulings of the court, shows that the pole was under the exclusive control of the town. No one else had any right to tamper with it. The doctrine "permits but does not compel an inference that defendant was negligent." Eaves v. City of Ottumwa, 240 Iowa 956, 969, 38 N.W.2d 761, 769, 11 A. L. R.2d 1164. So if, as defendant seems to apprehend, some third person or force should collide with or against or otherwise damage the post, so that defendant's exclusive possession and control would be interfered with, it might in defense of the res ipsa loquitur doctrine show such facts, and so relieve itself of the charge of negligence. See Young v. Marlas, 243 Iowa 367, 51 N.W.2d 443; Weidert v. Monahan Post Legionnaire Club, Inc., 243 Iowa 643, 51 N.W.2d 400; Rodefer v. Clinton Turner Verein, 232 Iowa 691, 6 N.W.2d 17; Titone v. Economy Bootery, 14 N. J. Misc. 349, 184 A. 809; and Munger v. Union Savings & Loan Assn., 175 Wash. 455, 27 P.2d 709.

At this point the defendant relies upon Eaves v. City of Ottumwa, supra; Aita v. John Beno Co., 206 Iowa 1361, 222 N.W. 386, 61 A. L. R. 351; Larrabee v. Des Moines Tent & Awning Co., 189 Iowa 319, 178 N.W. 373; and Pierce v. Gruben, 237 Iowa 329, 21 N.W.2d 881. In each of these the doctrine was held not applicable; but we have examined them and found them not factually in point. In Larrabee v. Des Moines Tent & Awning Co., supra, the rule was in fact held to apply to one of the defendants, who had caused to be erected a number of circus seats which collapsed

144

and injured the plaintiff. The seats were on a public sidewalk, and might have been interfered with or damaged by any passer-by; yet we said it was a res ipsa loquitur case.

For the reasons set out in Divisions I and III this cause is reversed and remanded for further proceedings in harmony with this opinion.—Reversed and remanded.

All JUSTICES concur.