Judith Kay GRABER, Appellant,

v.

CITY OF ANKENY, Iowa, Appellee.

No. 01–1994.

Supreme Court of Iowa.

Jan. 23, 2003.

John P. Roehrick of Roehrick, Hulting, Krull, & Blumberg, P.C., Des Moines, for appellant.

John Werner and Donna R. Miller of Grefe & Sidney, P.L.C., Des Moines, for appellee.

STREIT, Justice.

Judith Graber and Kristie Allen collided at a T-intersection in the City of Ankeny. Graber sued the city claiming it negligently timed the traffic signals at this intersection proximately causing her injuries. The city argued it is immune from liability under the discretionary function immunity statute of Iowa Code section 670.4(3) (2001). The trial court found the city is entitled to immunity and Graber appealed. Because we find the action of the city in timing the sequence of the traffic lights is not a discretionary decision based upon legitimate public policy considerations, we reverse.

## I. Background and Facts

In 1996, Judith Graber approached the T-intersection at State Street and Oralabor in the City of Ankeny. The light controlling the movement of her lane of traffic turned green. Traveling to the north, Graber entered the intersection to make a left-hand turn. At the same time, an east-bound car driven by Kristie Allen entered the intersection even though she had a red light. Allen's car hit Graber's car broadside. Graber sustained serious injuries. Allen testified the stop light controlling the movement of her lane of traffic

changed from green to yellow to red so quickly that she did not have time to stop.

Graber sued the city claiming it negligently set the timing of the traffic lights at the intersection. A jury found the city was not liable for Graber's injuries. Graber appealed. Because we found the trial court improperly admitted settlement evidence prejudicing Graber's substantial rights, we remanded the case for a retrial. *Graber v. City of Ankeny,* 616 N.W.2d 633 (Iowa 2000). The city then amended its answer claiming governmental function immunity based on Iowa Code section 670.4(3). The court granted a motion for summary judgment based upon the added defense. The district court found the timing sequence of the traffic lights is a discretionary function entitled to immunity and dismissed Graber's case. Graber appeals.

Graber contends the city is not immune for its actions in timing the sequence of traffic lights because it did not exercise discretion in simply following the mandates of the Manual on Uniform Traffic Control Devices (MUTCD). The city claims the MUTCD is not mandatory but contains recommendations and guidelines. The city further argues it is immune from liability because it exercised discretion and made policy-based judgments in timing the sequence of the traffic lights.

## II. Scope of Review

■ Our review of the district court's grant of the motion for summary judgment is for correction of errors at law. *Doe v. Cedar Rapids Cmty. Sch. Dist.,* 652 N.W.2d 439, 442 (Iowa 2002). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3) (2002).

## III. The Merits

Our only question on appeal is whether the city's action involved in timing the sequence of traffic lights is a discretionary function entitled to immunity from liability. Iowa Code section 670.2 (2001) provides "every municipality is subject to liability for its torts and those of its officers and employees, acting within the scope of their employment or duties." A municipality is not liable, however, for certain discretionary functions. Iowa Code section 670.4(3) contains our provision for governmental function immunity which provides a municipality is immune from

Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation, whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of a municipality, whether or not the discretion is abused.

Iowa Code § 670.4(3). Graber argues the immunity does not apply and the city is liable for her injuries. The city argues it is immune because it exercised discretion and its actions were based on numerous policy considerations.

■ Immunity is based upon the desire to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Goodman v. City of LeClaire,* 587 N.W.2d 232, 237 (Iowa 1998) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531, 541 (1988)). In determining whether the

discretionary function immunity of Iowa Code section 670.4(3) applies, we apply the test announced by the United States Supreme Court in *Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. at 1958–59, 100 L.Ed.2d at 540–41. *See Goodman,* 587 N.W.2d at 238 (adopting the *Berkovitz* test). The first step is to determine whether there was an element of judgment or discretion involved in the city's decision. *Doe,* 652 N.W.2d at 443. If we find the city exercised choice in timing the traffic lights, then we must determine whether this kind of judgment is the type the discretionary function immunity was designed to shield from liability. *Id.* If the answer to either of these questions is negative, then the discretionary function immunity is not available as defense. *Id.* The general rule is that of municipal liability—immunity is the exception. *Id.*

### A. Did the City Exercise Discretion?

Graber argues the city's action in timing the sequence of the traffic lights is not immune because it was governed by the MUTCD which leaves no room for discretion. The city argues the MUTCD is not mandatory but works merely as a guideline. The United States Department of Transportation publishes a volume entitled, "Manual on Uniform Traffic Control Devices." Our legislature has directed the department of transportation to "adopt a manual on specifications for a uniform system of traffic-control devices consistent with the provisions of this chapter [321]...." Iowa Code §§ 321.252 (directive for state authorities), 321.255 (directive for local authorities); Iowa Admin. Code r. 761–130.1 (1996). Pursuant to a local ordinance, the city established that traffic control devices were to be placed and maintained in accordance with the MUTCD and specifications of the Iowa Department of Transportation. *See* Ankeny Mun.Code § 10.12.010. Based on the

provisions of the MUTCD, the trial court determined the city's action was discretionary.

Graber has not presented any evidence to support the conclusion that the MUTCD's provisions prevent choices in running the city's traffic lights. There are no statutes or contractual provisions that restrict the city's timing of the sequence of traffic signals in such a way as to eliminate all aspects of discretion or judgment. The MUTCD provisions do not support a finding that the timing of traffic signals is mandatory.

Graber relies on one provision of the MUTCD to support her conclusion that the MUTCD is mandatory. In the MUTCD's prefatory provisions, it states:

**Engineering Study Required**

The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, *while this Manual provides standards* for design and application of traffic control devices, *the Manual is not a substitute for engineering judgment.* It is the intent that the provisions of this Manual be standards for traffic control devices installation, but *not a legal requirement* for installation.

Qualified engineers are needed to exercise the engineering judgment inherent in the selection of traffic control devices, just as they are needed to locate and design the roads and streets which the devices complement. Jurisdictions with responsibility for traffic control that do not have qualified engineers on their staffs, should seek assistance from the State highway department, their county, a nearby large city, or a traffic consultant.

MUTCD § 1A–4 (emphasis added). Graber argues this section imposes a duty upon the city to perform engineering stud-

ies in the operation and maintenance of traffic control devices and general regulation of traffic. However, the requirement that an engineering study be performed applies not to the operation of traffic control devices, but to the initial decision to use a particular type of traffic control device at a particular location. As to the city's original decision to use traffic lights at this intersection, the national manual functioned as an aid to guide the exercise of professional judgment in that choice. The MUTCD is not meant to function as a substitute for professional judgment in the selection of traffic control devices.

There is no other similar provision in the MUTCD imposing an engineering study requirement upon a city's operation of traffic control devices. The MUTCD addresses the timing of traffic signals in section 4B–20. This provision states, "traffic control signals shall be operated in a manner consistent with traffic requirements." Because the demands on traffic signals change with the traffic flow, pedestrian traffic, and other such variables, the MUTCD recommends engineering studies and information should be reevaluated periodically.

> In most cases the installation of a highway signal will operate either to the advantage or disadvantage of the vehicles and persons controlled. . . . Engineering studies should be made of operating signals to determine if the type of installation and the timing program meet the current requirements of traffic.

MUTCD § 4A–2; *see also id.* § 4B–20 (because "traffic flows and patterns change, it is necessary that the engineering data be updated and re-evaluated regularly"). After the original installation is completed, the MUTCD suggests "regular checks including the use of accurate timing devices should be made." *Id.* § 4B–20. Use of the word "should" indicates it is "recommended but not mandatory." *Id.* § 1A–5.

The Ankeny ordinance adopting the MUTCD states:

> [t]he council shall cause to be placed and maintained such traffic-control devices upon highways under its jurisdiction *as it may deem necessary* to indicate and carry out the provisions of this chapter . . . or to regulate, warn or guide traffic.

Ankeny Mun.Code § 10.12.010 (emphasis added). The "deem necessary" language contained in the Ankeny ordinance indicates the city must make a judgment both as to whether to place a traffic control device at a particular intersection and how to maintain it. This includes discretion for the timing of traffic signals.

In deciding whether it is necessary to install traffic signals and how to time those signals, the city considers a multitude of factors. These factors will be discussed in more detail below. We address only one factor here—mathematical computations used to determine proper timing. Graber argues no discretion existed in the city's action in determining the timing sequence because the city engineer merely fed information into a computer resulting in the timing sequence to be implemented. However, the consideration of this data alone does not make the city's decision devoid of any discretion. Furthermore, there is nothing in the record to suggest the city did not consider other factors but merely relied upon the numbers from the computer. To the contrary, the evidence suggests there were a number of considerations inherent in the city's action in timing the traffic lights.

A number of other jurisdictions have considered whether the national MUTCD functions as a mandate or as a guideline. The majority of these jurisdictions have determined the MUTCD is nothing more than a guideline. *See, e.g., Cope v. Scott,*

45 F.3d 445, 451 (D.C.Cir.1995); *McComb v. Tamlyn,* 173 Or.App. 6, 20 P.3d 237, 241 (2001) (provisions of MUTCD do not require traffic engineer to use particular signal in designing specific intersection because manual vests city engineer with discretion in making such decisions); *Dep't of Transp. v. Sanchez,* 75 S.W.3d 24, 28–29 (Tex.App.2001) (3.5 second clearance interval for traffic signals was set within the discretionary guidelines stated in paragraph 4B–15 of the Texas MUTCD); *Searles v. Agency of Transp.,* 171 Vt. 562, 762 A.2d 812, 814 (2000); *Harmann v. Schulke,* 146 Wis.2d 848, 432 N.W.2d 671, 674 (Ct.App.1988). *See also Zank v. Larson,* 552 N.W.2d 719, 722 n. 2 (Minn.1996) (Minnesota MUTCD "affords substantial discretion to local governmental units regarding all red clearance intervals"). We align ourselves with the majority of jurisdictions considering this issue.

 The legislature recognized it is not possible to detail motor vehicle safety regulations for all situations. Because of this limitation, it has given state and local authorities the ability to carry out the purposes of our traffic signs, signals, and markings laws. *See* Iowa Code § 321.252. The guidelines promulgated by the MUTCD are sufficient to advise local authorities in their efforts to promote public safety. Relevant to the case before us, the MUTCD states engineering studies should be used to determine the proper timing of the sequence of traffic signals. However, the analysis of the results of such studies and the implementation of the appropriate timing sequence necessarily involves judgment. The MUTCD is very clear that it is *not* meant to serve as a substitute for engineering judgment. Such a clear statement of intent negates Graber's argument that the MUTCD is mandatory. Nothing in the MUTCD requires the city to follow a particular procedure in timing the sequence of traffic lights. Local authorities have the ultimate choice to decide the appropriate timing sequence for a particular traffic light. The city's action in timing the traffic signals rested solely upon elements of judgment and discretion. We now must determine whether this is the type of judgment the discretionary function immunity was designed to shield from liability.

## B. Is This the Type of Decision the Immunity is Designed to Protect?

We next turn to the second part of the *Berkovitz* test. The city argues its decision in timing the traffic lights is immune from liability because it was based upon policy considerations. Though Graber has not cited any decisions holding that timing traffic signals in a certain manner is not immune from liability, our research revealed this very issue has been considered once before by our court. Over thirty-six years ago in *Gorman v. Adams,* we held the City of Cedar Rapids was not entitled to immunity for its "new and unusual signaling sequence" of a traffic light which caused an accident. 259 Iowa 75, 84, 143 N.W.2d 648, 653 (1966). In that case, the plaintiff entered an intersection driving in a westerly direction. The defendant, driving in an easterly direction, left her lane of traffic to turn and cross northeasterly into the westbound lane of traffic. In doing so, the defendant blocked the westbound lane in which the plaintiff was traveling. The two cars collided. The plaintiff argued the timing of the traffic lights caused a defect in the condition of the road for which the city was not immune from liability.

In *Gorman,* we recognized the rule of governmental immunity is to be strictly construed against a municipality. *Id.* at 80, 143 N.W.2d at 651. We stated, even "assuming that the city was exercising a governmental function, nevertheless liabili-

ty may arise." *Id.* at 82, 143 N.W.2d at 652. Despite the several cases finding the timing of traffic signals is a governmental function entitled to immunity, we held to the contrary. We based this decision, in part, upon Iowa Code section 389.12 (1962), stating a municipality

> shall have the care, supervision, and control of all public highways, streets, avenues, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances.

Iowa Code § 389.12 (1962).[1] *Gorman* seemingly interpreted this statute to mean "care, supervision, and control" of streets includes the actions of a city in regulating traffic.

We held the timing of traffic lights is indistinguishable from a city's failure to maintain a traffic signal in good physical condition. We analogized *Gorman* to a previous case in which we denied immunity where a boy was killed by a falling traffic signal. *See Hall v. Town of Keota*, 248 Iowa 131, 79 N.W.2d 784 (1956). The nuts and bolts of the light pole were worn and rusted so that the traffic signal "became a trap and an inherently dangerous instrumentality." *Id.* at 134, 79 N.W.2d at 785.

Our case law on discretionary function immunity has been significantly refined in the past thirty-six years and continues to evolve. Though our current state tort claims statute is nearly identical to the statute in effect in 1962, our analysis of immunity cases has greatly changed. In *Gorman*, we did not examine whether the city based its decision in timing the traffic

lights on legitimate policy considerations. Instead, we determined the city's failure to perform the statutory duty imposed by section 389.12 resulted in liability despite the fact the function involved was a governmental action based upon judgment. We do not decide the case before us based upon our holding in *Gorman.* Rather, our analysis must go further to determine whether the city's timing of the traffic signals was based upon legitimate public policy considerations. For the reasons stated below, we hold the city's actions in timing the sequence of the particular traffic signals at the intersection of State Street and Oralabor is not immune from liability.

At some point, a distinction must be drawn between a mere choice and a choice based upon the "meaningful exercise of discretion." *See Christensen v. Mower County*, 587 N.W.2d 305, 308 (Minn.Ct.App.1998). It can be argued every action taken by a government employee involves the exercise of discretion. However, not all actions involving discretion are immune from liability. "[T]he operative distinction is the one between a judgment that embodies a professional assessment undertaken pursuant to a policy of settled priorities and a fully discretionary judgment that balances incommensurable values in order to establish those priorities." *Shansky v. United States*, 164 F.3d 688, 694 (1st Cir.1999). We must determine

> whether some plausible policy justification could have undergirded the challenged conduct. The critical question is whether the acts or omissions that form

---

1. Iowa Code section 389.12 has since been repealed and is now contained as modified in Iowa Code section 364.12 (2001). Iowa Code section 364.12 provides, subject to enumerated exceptions,

> A city shall keep all public grounds, streets, sidewalks, alleys, bridges, culverts, over-

> passes, underpasses, grade crossing separations and approaches, public ways, squares, and commons open, in repair, and free from nuisance. . . .

Iowa Code § 364.12.

the basis of the suit are susceptible to a policy-driven analysis, not whether they were the end product of a policy-driven analysis.

*Id.* (citing *Rosebush v. United States,* 119 F.3d 438, 444 (6th Cir.1997)). In other words, an immune governmental action is one that weighs competing ideals in order to promote those concerns of paramount importance over the less essential, opposing values. Whether or not the city actually made its decision with policy considerations in mind is not determinative. Instead, the city's actions in timing the lights must be amenable to a policy-based analysis. The circumstances must show the city legitimately could have considered social, economic, or political policies when making judgments as to the timing of the traffic signal.

 In examining whether the city's decision was based upon legitimate policy considerations, the existence of professional judgment may be one factor to consider. However, professional judgment alone is not sufficient to elevate the discretionary function to such a level as to immunize it from liability. We do not consider the subjective intent of the person making the governmental decision as it is irrelevant to our immunity analysis. *Shansky,* 164 F.3d at 692. Rather, we look at the nature of the governmental action to determine whether the city could have considered legitimate policy-based factors in its decision to set the timing sequence of the traffic lights in a particular manner. Legitimate policy-based considerations are those supported by social, political, or economic policies. *Doe,* 652 N.W.2d at 444. It takes more than a mere label of "policy" to rise to the level of a legitimate policy-based consideration. To be legitimate, the policies must be ones which the municipality genuinely could

have considered and balanced in making its judgment.

Undeniably, there are a number of factors the city could have considered in determining the timing of the traffic signals at this intersection. The Ankeny municipal ordinance reflects the city's policy interest in warning and guiding traffic throughout the city. The city considered the configuration of the intersection, the volume and direction of traffic into the intersection, and whether it was necessary to favor certain drivers over others. The city needed to set the sequence of the lights to accommodate eighty percent of the traffic making turning movements. As a general safety concern, the city was already having problems at this intersection with the original four-and-a-half second yellow interval. It was concerned that increasing the length of the yellow could cause more drivers to attempt to beat the red light.

In general, when a city determines the timing sequence of traffic signals, it bases its decision, in part, upon the desire to provide orderly and safe movement of traffic throughout the city. *See Aguehounde v. Dist. of Columbia,* 666 A.2d 443, 448 (D.C.1995). As such, it was necessary for the city to consider traffic in surrounding areas as it affects a particular intersection. Finally, pedestrian traffic may be considered in deciding the appropriate timing of traffic signals. *See id.*

 All of the above considerations are based upon one priority only—the city's overarching safety concern. "[W]hether a discretionary act is policy-driven cannot be short-circuited simply by raising the specter of a general safety concern." *Shansky,* 164 F.3d at 693. The mere existence of a sweeping safety consideration does not catapult the city's actions into the zone of immunity for decisions based upon social, economic, or political policy. *See Doe,* 652

N.W.2d at 445. Though the city may have considered preordained safety policies, that is not sufficient to ascend to the level of an immune policy-based action. Almost every decision made by a public employee is done with respect to general safety considerations. However, individual decisions made under the umbrella of safety considerations are not immune. There must be something more than bald-faced assertions of safety at the center of the city's decision.

■■■■■ Other than pre-determined safety considerations, there is no evidence that anyone of authority balanced any priorities of competing importance. *See Shansky*, 164 F.3d at 694; *Messerschmidt v. City of Sioux City*, 654 N.W.2d 879, 882–83 (Iowa 2002). The city has failed to show any broad-sweeping economic, political, or social considerations were at the heart of its decision on how to time this traffic signal. There is no evidence to suggest the city's judgment would have involved any policy-making. *Doe*, 652 N.W.2d at 444 ("[t]he more the ... judgment involved policy-making the more it is to be recognized as immune from judicial process"). The city's conduct was not "entwined in a layer of policy-making that

exceeded the mere application of rules to facts." *Id.* at 446. The city's decision in timing these traffic signals is the same as the ordinary, day-to-day decisions faced by all municipalities in regulating their streets. The factors considered by the city here are not legitimate policy-based considerations implicating governmental functions. *Id.* at 445. A governmental action is not afforded immunity simply because a municipality announces that the action was policy-based. The challenged action must lend itself to a policy-based analysis. Here, the city judgment was based on nothing more than a generic safety consideration. As such, the city is not immune from Graber's tort action.[2]

The facts before us show the movement of both Graber and Allen was controlled by the traffic signals that were operating according to the timing sequences the city had previously set. In setting the sequence, the city's professional judgment did not rise to the level of that of an immune discretionary function because it was not based upon legitimate policy considerations. We reverse and remand.

## IV. Conclusion

The city exercised its discretion when it decided the proper timing of the traffic

---

**2.** The majority of jurisdictions considering whether a municipality is immune from suits based upon its judgment in timing traffic signals have answered in the affirmative. *See, e.g., Aguehounde*, 666 A.2d at 448 (citing safety considerations and professional judgment of traffic engineers); *Zank*, 552 N.W.2d at 722 (citing safety considerations); *Ciambrone*, 558 A.2d at 51 (citing safety considerations and "overall planning of traffic control"); *Weiss v. Fote*, 7 N.Y.2d 579, 200 N.Y.S.2d 409, 167 N.E.2d 63, 68 (1960) (citing safety considerations and professional judgment); *Hamilton v. Town of Hamlet*, 238 N.C. 741, 78 S.E.2d 770, 771 (1953) (citing safety considerations and noting that immunity is the rule, not the exception); *Shunkwiler v. Ohio Dep't of Transp.*, 66 Ohio Misc.2d 96, 643 N.E.2d 593, 594–95 (1992); *Davis v. City of Cleveland*, 709

S.W.2d 613, 615 (Tenn.Ct.App.1986) (citing professional judgment). We do not find these cases helpful because they appear to apply immunity based upon either the assertion that safety considerations and/or professional judgment were involved. Neither general safety concerns nor mere assertions of professional judgment are sufficient to confer immunity upon a municipality. A handful of jurisdictions do not engage in an analysis of whether the municipality balanced legitimate public policies. *See, e.g., Conover v. Bd. of County Comm'rs*, 527 So.2d 946, 946 (Fla.Ct. App.1988); *Raisanen v. City of Milwaukee*, 35 Wis.2d 504, 151 N.W.2d 129, 134 (1967). These cases are likewise unhelpful to our *Berkovitz* analysis because they completely bypass the second part of the discretionary function test.

lights at the intersection of State Street and Oralabor. However, this choice was not based upon any broad-sweeping policy considerations. The city is therefore not immune from liability for its actions in timing these traffic signals. Because genuine issues of material fact existed as to the city's liability, the city's motion for summary judgment should not have been granted. We reverse and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**