Robert J. MADDEN and Rebecca A. Stutt, Co–Executors of the Estate of Eleanor L. Madden, Deceased, Appellants,

v.

CITY OF ELDRIDGE, Iowa, Appellee.

No. 02–0604.

Supreme Court of Iowa.

May 7, 2003.

Bradley L. Norton and Brian T. Fairfield of Norton & Norton, Lowden, for appellants.

Michael C. Walker of Hopkins & Huebner, Davenport, for appellee.

STREIT, Justice.

Twenty-four years after an apartment building was constructed, the ceiling of one apartment collapsed, killing a tenant. The estate sued the City of Eldridge claiming it failed to properly inspect the building and failed to enforce the Uniform Building Code when the building was constructed in 1975, resulting in the tenant's death. The district court found the city was immune because its actions were protected by the discretionary function immunity of Iowa Code section 670.4(3) (1999). The estate appealed. Because we agree with the district court, but upon different grounds, we affirm.

## I. Background and Facts

Eleanor L. Madden died in July 1999 when her apartment ceiling collapsed on her. The building was constructed in 1975 in the City of Eldridge. Because the city adopted the Uniform Building Code in 1970, the code applied to the construction of the apartment building. During construction, after the drywall had been installed but before the drywall had been mudded and taped, the contractor did not notify the building inspector that the building was ready for its third inspection as required by the building code. *See* Uniform Building Code § 304(d)(3) (the inspector "upon notification from the permit

holder or his agent, shall make the following inspections...."). During the final inspection, the inspector determined he had neither been notified for the wallboard inspection nor had one been performed. By the time the inspector came to the site to do the final inspection, the drywall, including the seams on both the ceilings and walls, had been mudded, taped, and painted. This completely concealed the nails, nail heads, and nail spacing used to hold the ceiling in place. The inspector then issued a certificate of occupancy.

In 1999, the ceiling of Madden's apartment collapsed because of defects in its construction, including too few nails and improper size and spacing of the nails. Madden's estate sued the builder, the apartment owner, and the City of Eldridge. The city is the only remaining defendant in this case.

Madden's estate claimed the city inspector failed to inspect the building as required by the Uniform Building Code and ignored code violations in the building thereby causing the ceiling to collapse killing Madden. In July 2000, the city filed a motion for summary judgment. The city argued it was immune because the building code violations were for latent defects. Iowa Code § 670.4(6) (1999). Madden's estate (hereinafter "Madden") resisted and the city filed a supplemental response claiming the city was also immune under the discretionary function immunity of Iowa Code section 670.4(3). The district court denied the motion on the basis of insufficient evidence to show the defects were latent at the time of inspection in 1975.

In February 2001, the city filed a renewed motion for summary judgment and the district court denied it on similar grounds. On February 8, 2002, the city filed a motion for separate adjudication of law points and renewed its motion for summary judgment asserting Madden's claim of negligent inspection was barred by the statute of repose in Iowa Code section 614.1(11) (1999) or the statute of limitations in sections 614.1(4) and (2) (1999). The city also argued it was immune based upon three grounds: (1) the discretionary function immunity statute under Iowa Code section 670.4(3); (2) latent defects immunity under Iowa Code section 670.4(6); and (3) inspection immunity pursuant to Iowa Code section 670.4(10) (1999). The court denied the city's motion for summary judgment finding it untimely and the existence of material facts regarding the city's claim the defects were latent precluded the grant of summary judgment.

At the start of the trial, the trial court reconsidered, on its own motion, the earlier denial of the city's motion for summary judgment based upon the discretionary function immunity statute. The court granted the city's motion for summary judgment finding the city's action in inspecting the building was discretionary and therefore immune from judicial review. *See* Iowa Code § 670.4(3). Madden appeals.

## II. Scope of Review

We review the trial court's grant of summary judgment for correction of errors of law. *Mason v. Schweizer Aircraft Corp.,* 653 N.W.2d 543, 547 (Iowa 2002). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3) (2001). We review the record in the light most favorable to the non-moving party. *Mason,* 653 N.W.2d at 547.

## III. The Merits

Madden claims the trial court erred in applying the discretionary function immu-

nity based upon the conclusion that enforcement of the city's building code at the time a code violation was discovered was within the building inspector's discretion. Madden also asserts the trial court erred in granting the city's untimely motion for summary judgment and in failing to determine the issues raised in the motion were precluded by earlier denials of similar motions. Finally, Madden argues the city did not preserve error as to three of its defenses urged on appeal. We first address whether the trial court had authority to revisit a motion for summary judgment that had previously been denied for untimeliness.

## A. Untimely Motion for Summary Judgment

■ Madden asserts the trial court erred in granting the city's untimely motion for summary judgment, which had previously been denied by a different judge. The city filed a motion for summary judgment only forty-five days before trial. Iowa Rule of Civil Procedure 1.981(3) (2002) provides motions for summary judgment "shall not be filed less than sixty days prior to the date the case is set for trial, unless otherwise ordered by the court." In this motion, the city raised the defense of discretionary function immunity for the first time. Judge McKenrick denied the city's motion for several reasons, including its untimeliness. Judge Kelley, the trial judge, later stated, "having reviewed the statute, the case of *Goodman v. City of Le Claire* and the Uniform Building Code in effect at the time, [the court] finds that [it] should hear argument on that motion for summary judgment at this time." *See* 587 N.W.2d 232 (Iowa 1998).

■ The trial court had authority to review the motion for summary judgment. When the district court first denied the city's motion for summary judgment, it did not rule on the issue of the discretionary function immunity. Later, Judge Kelley took this issue up on his own motion. The trial court did not err in revisiting the motion to ensure the issues were suitable for a trial on the merits. As long as the trial court has jurisdiction over the case and the parties, it has authority to correct its own perceived errors. *See Iowa Elec. Light & Power Co. v. Lagle,* 430 N.W.2d 393, 396 (Iowa 1988). "The action of one judge, sitting as the court, may have the effect of altering or setting aside a previous ruling by another judge sitting as the same court." *State v. Wrage,* 279 N.W.2d 4, 6 (Iowa 1979). The trial court's action in reconsidering a motion for summary judgment is discretionary. We affirm the trial court's authority to rule on the untimely motion for summary judgment. We now turn to the issue of whether the city has preserved error for our appellate review of three of its defenses.

## B. Preservation of Error

■ On appeal, the city seeks affirmance of the district court's ruling based upon three grounds that were rejected by the court in its separate denials of motions for summary judgment. First, the city argues it is immune from liability for allegedly failing to discover a latent defect in the course of an inspection. *See* Iowa Code § 670.4(6). The city also asserts immunity based upon Iowa Code section 670.4(10) for its actions in the course of conducting an inspection. Finally, the city asserts Madden's claim is barred by the statute of repose or statute of limitation. *See* Iowa Code §§ 614.1(11), 614.1(2). Madden argues the city has not preserved error as to each of these three arguments. We disagree.

The city filed a motion for summary judgment arguing it is immune for failure to discover latent defects during the

course of an inspection pursuant to Iowa Code section 670.4(6). The city also filed a supplemental response to Madden's resistance to the city's motion for summary judgment. In the supplemental response, the city raised the following issues:

1. immunity based upon inspection of the apartment building under Iowa Code section 670.4(10);

2. immunity under the discretionary function exception of Iowa Code section 670.4(3); and

3. the cause of action is barred based upon statute of limitation or statute of repose of Iowa Code sections 614.1(2) and 614.1(11).

The court denied the city's original motion for summary judgment based upon the defense that the defects were latent. The court did not rule on the merits of the other three grounds asserted in the supplemental response. The city then filed a motion for separate adjudication of law points and renewed motion for summary judgment in which the city asserted the same four arguments listed above. The court ruled the city waived the statute of repose/statute of limitation defense and denied the remainder of the motion.[1] The city made a final attempt to have the court rule on its defenses by filing a 1.904(2) motion. The city asked the court to clarify the factual basis for denying its claim based upon section 670.4(10). The court again refused to rule on the merits of the issue. The city's 1.904(2) motion was sufficient to preserve error. We address only two of the city's defenses below.

## C. Discretionary Function Immunity

■■■ There have been a number of cases recently in which we have discussed and clarified the use of the discretionary

function immunity under Iowa Code section 670.4(3). The city is entitled to this immunity only if it satisfies the two-part *Berkovitz* test. *See Berkovitz v. United States*, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531, 540–41 (1988). The city must show there was an element of judgment or discretion involved in the city's decision. *Graber v. City of Ankeny*, 656 N.W.2d 157, 161 (Iowa 2003). If we find the city did not have discretion in its challenged action, the immunity does not apply. If, however, we find the city exercised choice, then we must determine whether its judgment is the type the discretionary function immunity was designed to shield from liability. *Id.* The general rule is clear; liability is the rule and immunity the exception. *Id.* (citing *Doe v. Cedar Rapids Cmty. Sch. Dist.*, 652 N.W.2d 439, 443 (Iowa 2002)). That is, we will narrowly construe the discretionary function exception.

The facts are not disputed by either party. At the time the drywall had been installed but before the drywall had been mudded and taped, the contractor did not notify the building inspector so that a lath/wallboard inspection could be performed as required by section 304(d)(3) of the building code. At the time of the final inspection, the inspector determined no wallboard inspection had been requested or performed. By the time the inspector came to the site to do the final inspection, the drywall, including the seams on both the ceilings and walls, had been mudded, taped, and painted. The inspector then issued a certificate of occupancy stating the building complied with the requirements of the code.

---

**1.** Because we resolve this appeal based upon other grounds, we do not address the city's argument that Madden's cause of action is barred by the statute of repose and/or statute of limitations.

The district court concluded the city is immune because the inspector was vested with discretion once the contractor failed to notify the inspector the wallboards were ready for inspection. The court stated, "the city inspector at the time of the final inspection was faced with a dilemma." The court determined the inspector had a choice between: (1) requiring the contractor to remove the tape and the mud from all the seams of the entire apartment building to allow the inspector to make the required inspection pursuant to section 304(d)(3) of the building code; or (2) rely on the "reputation" of the contractor and subcontractors to conclude the construction complied with the building code. Having found the city exercised its discretion, the district court did not complete the *Berkovitz* two-step analysis. Assuming arguendo the city exercised discretion, we must determine whether the city's judgment is the type the discretionary function immunity was designed to shield from liability. *Graber*, 656 N.W.2d at 161.

The city argues the second prong of the *Berkovitz* test is satisfied because the city adopted the Uniform Building Code to "further public policy concerns." The city cites the preface of the code which states, "The Uniform Building Code is dedicated to the development of better building construction and greater safety to the public by uniformity in building laws." The city also cites a specific provision of the code which provides the code was promulgated to "safeguard life or limb, health, and public welfare." Because the code was adopted to further public policy, the city argues any decision made by the inspector pursuant to the code—even one that violates the code—promoted public policy and is therefore immune.

Madden argues the city's decision was not the type the discretionary function immunity was designed to shield from liability. Specifically, Madden contends "[t]he choice of the city inspector to ignore the requirements of the [building code] was not a permissible exercise of policy judgment." Madden asserts public policy concerns did not drive the inspector's judgment in this case. Madden argues the inspector was motivated purely by convenience.

■■ While most governmental actions involve some degree of discretion, only those choices based upon the "meaningful exercise of discretion" are immune from liability. *Id.* at 164. The critical distinction "is the one between a judgment that embodies a professional assessment undertaken pursuant to a policy of settled priorities and a fully discretionary judgment that balances incommensurable values in order to establish those priorities." *Id.* (quoting *Shansky v. United States*, 164 F.3d 688, 694 (1st Cir.1999)). An immune governmental function is "one that weighs competing ideals in order to promote those concerns of paramount importance over the less essential, opposing values." *Id.* We must determine whether the city's action in failing to complete the inspections and issuing the certificate of occupancy is amenable to a policy-based analysis. *See id.* "The circumstances must show the city legitimately could have considered social, economic, or political policies when making judgments as to the" inspection of this particular apartment building. *See id.*

In an attempt to satisfy the second prong of the *Berkovitz* test, the city asserts it is immune because its discretionary action was prompted by safety concerns. Safety can be a legitimate policy consideration under certain circumstances if a municipality actually weighs various competing factors, including safety concerns. Here, however, the city's cursory attempt to argue safety considerations were the force behind the inspector's ac-

tion is not sufficient to confer immunity upon the city. "[W]hether a discretionary act is policy-driven cannot be short-circuited simply by raising the specter of a general safety concern." *Id.* at 165 (citing *Shansky,* 164 F.3d at 693). There must be something more than a generalized concern for safety at the heart of the challenged decision.

There is no evidence in the record to suggest the building inspector engaged in this type of public policy analysis before he decided not to inspect the lath and wallboards. No legitimate policy-making decisions involving significant judgment were involved. *Doe,* 652 N.W.2d at 445. The record indicates the building inspector's action was nothing more than an ad hoc decision, tailored to the particular circumstances before him at the final inspection. *See Messerschmidt v. City of Sioux City,* 654 N.W.2d 879, 883 (Iowa 2002).

The building inspector's action, or more accurately inaction, was merely the performance of a routine duty. This public official did not weigh any broad-sweeping policies before he decided not to perform a required inspection. It would be more than fair to suggest the inspector at the very least weighed the potential consequences of not inspecting the adequacy of the drywall construction. There is nothing to show he weighed this as a legitimate policy factor. He merely balanced this unknown safety risk against the cost of insisting on the required inspection. There is no evidence the inspector considered the city's interest in promoting development in the community or in ensuring safe living standards for the City of Eldridge's citizens. The decision not to require compliance with the building code and not to perform the required inspections did not involve a "high degree of discretion and judgment ... in weighing alternatives and making choices with re-

spect to public policy and planning." *Id.* (citing *Doe,* 652 N.W.2d at 444). The decision did not reflect "real policy decisions implicating governmental functions." *Doe,* 652 N.W.2d at 445.

In sum, the facts do not show policy considerations drove the inspector's failure to perform an inspection despite his knowledge there could be violations of the building code which could render the building hazardous. The record does not show the manner in which the city performed its inspections was "policy based or susceptible to policy analysis." *See Marlys Bear Med. v. United States,* 241 F.3d 1208, 1216 (9th Cir.2001). Under these circumstances, there is no basis for applying the discretionary function immunity to the city's alleged negligence in inspecting the apartment. We nevertheless affirm the district court's grant of summary judgment based upon a different statutory immunity provision.

### D. Immunity Premised Upon Iowa Code Section 670.4(10)

 The city also asserted the defense of immunity for negligent inspections under Iowa Code section 670.4(10). This section provides the city is immune from liability for

> [a]ny claim based upon an act or omission of an officer or employee of the municipality, whether by issuance of permit, inspection, investigation, or otherwise ... if the damage was caused by a third party, event, or property not under the supervision or control of the municipality, unless the act or omission of the officer or employee constitutes actual malice or a criminal offense.

Iowa Code § 670.4(10). Whether this section is applicable in the case before us is a question of law appropriate for determination by the trial court. *Messerschmidt,* 654 N.W.2d at 884. Madden has claimed

the city was negligent "by failing to properly inspect the apartment complex for compliance with the Uniform Building Code in 1975 or for ignoring deficiencies in construction that were not in compliance with the Uniform Building Code." In other words, Madden alleges the city is liable for its acts or omissions in its inspection of the building. This is precisely the type of claim that is meant to come within the protective ambit of Iowa Code section 670.4(10).

The Iowa Court of Appeals has addressed this statute within the context of a strikingly similar case. In *Williams v. Bayers*, the City of Davenport inspected a building and issued a permit for use or occupancy. 452 N.W.2d 624 (Iowa Ct.App. 1990). While on her way to a beauty appointment, Frances Wagner fell on the steps in the building. *Id.* at 625. Wagner died after a month of hospitalization. *Id.* Wagner's estate sued the owner of the building and the city alleging the city negligently inspected the building. *Id.* For the same reasons as we cite below, the court of appeals held the city was immune from its actions in inspecting the building. *Id.* at 626. *See also Smith v. City of Bayard*, 625 N.W.2d 736, 738 (Iowa 2001) (agreeing with the holding in *Williams* and applying same principle to issue of whether a municipal dog ordinance constitutes supervision or control).

In the case before us, the apartment building where Eleanor Madden was killed is privately owned. *See Williams*, 452 N.W.2d at 626. The extent of the city's involvement in the building was strictly limited to conducting an inspection and issuing a permit. *See id.* Madden's death was caused by a third party. *See id.* Madden does not make any allegations of actual malice or of a criminal offense on the part of the city building inspector. *See id.*

Neither the city's inspection nor its findings the building complied with the building code constitute supervision or control over the person or premises as contemplated by section 670.4(10). *See id.* The municipality's action in enforcing the building code "was not the type of supervision or control necessary to bring the case outside of the section 670.4(10) immunity." *See Smith*, 625 N.W.2d at 738. Under this statute, liability may attach if the third party caused damage (1) while the municipality was overseeing the third party's conduct with the power to direct and decide the implementation of the third party's intentions, or (2) while the municipality was exercising restraining influence over the third party. *Hameed v. Brown*, 530 N.W.2d 703, 707 (Iowa 1995). The city did not have a duty to supervise the construction of the apartment building. It did not manage or oversee the project. *See* Black's Law Dictionary 1453 (7th ed.1999) ("supervision" is the "act of managing, directing, or overseeing persons or projects"). Rather, the city's job was limited to determining whether the building complied with the uniform building code. Such a determination does not constitute a city's influence over a contractor. *See id.* at 330 ("control" means to "exercise power or influence over"). Because the city inspected the building and did not supervise or control the contractor, Iowa Code section 670.4(10) immunizes the city from liability. In light of this conclusion, it is not necessary for us to address any other defenses raised by the city.

## IV. Conclusion

The trial court had authority to revisit the untimely motion for summary judgment. The city is not immune under the discretionary function immunity because there is no evidence to show the inspector's decision to not require compliance

with the building code and to not conduct a required inspection was susceptible to a policy-based analysis. However, the city is immune for its actions or omissions pursuant to inspection. The city did not control or supervise the contractor or building owner as contemplated by Iowa Code section 670.4(10). We affirm the trial court's grant of summary judgment in favor of the city but base our decision upon immunity pursuant to section 670.4(10).

**AFFIRMED.**