Kecia D. ANDERSON, Appellant,

v.

STATE of Iowa and Marilyn Mercado, Appellees.

No. 03–0322.

Supreme Court of Iowa.

Feb. 11, 2005.

Bruce L. Braley of Dutton, Braun, Staack, Hellman, P.L.C., Waterloo, for appellant.

Thomas J. Miller, Attorney General, and Julie A. Burger, Assistant Attorney General, for appellees.

WIGGINS, Justice.

Kecia Anderson brought a tort claim against Marilyn Mercado and the State of Iowa for injuries she sustained in a fall on the campus of the University of Northern Iowa. Anderson alleged Mercado and the State were negligent in failing to close the library early due to the weather conditions. She also alleged the State was negligent for failing to remove ice from the walkway, a claim based on premises liability. The district court directed a verdict on Anderson's claim against Mercado and the State for their failure to close the library early due to the weather conditions because the decision to keep the library open was a discretionary function. The district court submitted the premises liability case against the State on the theory Anderson was an invitee. The jury returned a verdict adverse to Anderson on the premises liability claim. Anderson appealed contending the decision to keep the library open was not a discretionary function, and the district court erred in its instructions to the jury on the premises liability case. The court of appeals reversed the district court on the issue of discretionary function but affirmed on the errors claimed in the jury instructions. We hold the decision to keep the library open is immune from liability under the discretionary function exception. The court, being evenly divided on the jury instruction issue, affirms the decision of the district court on this issue.

## I. Background Facts and Proceedings.

On February 8, 2001, Anderson arrived at the library on the campus of the University of Northern Iowa in the early evening to study for an exam. The library closed at 12 a.m. Andersen left the library at approximately 11:55 p.m. By that time, a winter storm had caused icy conditions on the campus's streets and sidewalks. As

soon as Anderson walked beyond the overhang of the library, she slipped and fell on the ice injuring herself.

The weather on the evening of February 8, 2001 was particularly hazardous because of the storm. Although several employees at the library became concerned as the storm grew worse during the course of the evening, the library remained open. Mercado, the interim dean of the library, was in charge of the library until she left the building sometime after 5 p.m. Linda McLaury, a library assistant, returned to the library from her evening meal around 8 p.m. At that time, McLaury observed the sidewalks were starting to get a little slick. Barb Weeg, a librarian, left the library around 9 p.m. On Weeg's trip home, she observed icy conditions and became concerned for the safety of the students and employees working in the library. Upon arriving home, Weeg called McLaury to report the sidewalks around the university were icy, but the roads in town "were not too bad." Weeg instructed McLaury to contact Mercado about the icy conditions and to inquire whether the library should remain open under these weather conditions. Mercado had the authority to close the library early under severe weather conditions. McLaury called Mercado at her home sometime between 9:30 and 10 p.m.

McLaury expressed Weeg's concerns to Mercado about the weather. Mercado lived in rural Parkersburg, which is several miles away from Cedar Falls, the location of the library. McLaury told Mercado that Weeg told her the "sidewalks were icy," and she thought the student working at the reference desk was concerned and might need to go home. Mercado remembers checking the traffic on the highway in front of her home, but it was hard for her to assess the situation in Cedar Falls from the traffic on the highway where she lived.

Mercado then asked McLaury whether she was concerned for her own safety. McLaury replied she was fine and had no problems with staying until closing. After McLaury assured Mercado she could handle the duties without the help of the students, Mercado told McLaury to ask the three students working in the library if they needed to go home because of the weather. Mercado also asked McLaury how many people were in the building, because the number of persons using the library bears on Mercado's decision whether to shut down the library. McLaury responded about thirty to thirty-five people were in the building. Mercado then made the decision to keep the library open until closing. She told McLaury to call her back if anything else came up that evening.

At trial, Mercado testified two other factors not discussed in her phone conversation with McLaury influenced her decision to keep the library open. First, was the library's written weather/working policy. Although the university intended the weather/working policy to clarify the policy for library personnel, it contained the following statement from an article in the December 9, 1996 Campus News Network, which provided:

> It is the policy of the University to continue normal hours of operation and maintain a regular work schedule for staff members during periods of severe weather and/or adverse working conditions. It is a basic premise of this policy that University faculty, staff, and students shall have the opportunity to make their own decision about reporting to work or class with due consideration for travel safety conditions.

The second factor to influence Mercado's decision to keep the library open was Weeg's tendency to exaggerate and to be over-concerned about things.

The evidence at trial differed as to the conditions that evening. According to one of the student employees at the library, sometime after 8 p.m., a patron arrived at the library and inquired as to whether the library would stay open during the storm. The patron described the weather as "very scary." In contrast to this testimony, a student assistant reported to work at 9 p.m. She testified it was dark and rainy but she did not encounter or notice any icy conditions around the library. This assistant did have one patron ask whether the library would be open the rest of the evening. At no time did this patron tell the assistant it was icy outside. The assistant saw about ten patrons enter the library between 9 p.m. and closing. Not one patron expressed any concern about the weather. McLaury recalls seeing fifteen to twenty students leaving the library between 11:40 and 11:50 p.m. Not one of these students returned to the library to report icy conditions or that anyone had fallen outside the library.

After she sustained her injury, Anderson filed a tort claim with the State Appeal Board. After six months, Anderson withdrew the claim and filed a petition and jury demand in district court. Her petition alleged Mercado and the State were negligent in failing to close the library early due to the weather conditions. She also alleged the State was negligent for failing to remove ice from the walkway, a claim based on premises liability. The case proceeded to trial. At the close of Anderson's evidence, defendants moved for a directed verdict on several grounds, including the discretionary function immunity. The district court granted the motion and entered a directed verdict in favor of Mercado and the State on the basis the decision not to close the library was subject to discretionary function immunity. The district court submitted the case against the State on the premises liability claim. The jury returned a verdict in favor of the State. Anderson filed a motion for a new trial, which the trial court overruled. Anderson appealed.

The court of appeals held Mercado's decision to keep the library open was not subject to discretionary function immunity. It stated "the simple determination that weather conditions did not warrant the early closing of the library is not ... a policy driven analysis. It is not a decision supported by social, political, or economic policies." The court of appeals affirmed on the premises liability claim. This court granted further review.

## II. Issues.

■ On further review, we can review any or all of the issues raised on appeal or limit our review to just those issues brought to our attention by the application for further review. *Smith v. Shagnasty's Inc.*, 688 N.W.2d 67, 72 (Iowa 2004). Anderson raises two issues on appeal relevant to our disposition of this case: (1) whether the district court erred in granting the directed verdict; and (2) whether the district court erred in instructing the jury on the premises liability claim.

## III. Scope of Review.

■ Our review of a district court's granting of a directed verdict is for correction of errors at law. *Ette v. Linn–Mar Cmty. Sch. Dist.*, 656 N.W.2d 62, 66 (2002). On appeal, we view the evidence in the light most favorable to the verdict, taking into consideration all reasonable inferences that could be fairly made by the jury. *Id.* We review a court's refusal to give an instruction for an abuse of discretion, while we review challenges to jury instructions for correction of errors at law. *Kiesau v. Bantz*, 686 N.W.2d 164, 171 (Iowa 2004).

## IV. Did the District Court Err in Granting the Directed Verdict?

The district court granted Mercado and the State's directed verdict by concluding the decision to keep the library open was a discretionary function under Iowa Code section 669.14(1) (2001). The question we must decide is whether the district court correctly interpreted section 669.14(1) and applied it to the evidence.

The State does not waive its sovereign immunity for actions "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused." Iowa Code § 669.14(1). For purposes of determining whether an action is a discretionary function under Iowa Code chapter 669, the Iowa Tort Claims Act, our analysis is effectively identical to a discretionary function analysis under Iowa Code chapter 670 governing the tort liability of governmental subdivisions. *Schmitz v. City of Dubuque*, 682 N.W.2d 70, 73 (Iowa 2004). Immunity is the exception, and liability is the rule under the tort claims acts. *Id.* at 74. The discretionary function immunity is an affirmative defense raised by the defendant, and the party asserting immunity has the burden to prove the immunity. *Id.* at 73.

We utilize a two-step test for determining whether a challenged action falls within the discretionary function exception, and thus is entitled to statutory immunity from tort liability. The test requires the court to consider whether the action is a matter of choice for the acting employee and when the challenged conduct involves an element of judgment, to determine whether that judgment is of the kind the discretionary function exception was designed to shield. Iowa Code § 670.4(3); *Bellman v. City of Cedar Falls*, 617 N.W.2d 11, 19 (Iowa 2000).

Anderson concedes Mercado and the State met the first prong of the test. Therefore, we must decide whether the second prong is satisfied. This court has adopted the Supreme Court's holding that the discretionary function exception "protects only governmental actions and decisions based on considerations of public policy." *Berkovitz v. United States*, 486 U.S. 531, 536–37, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531, 541 (1988); *Goodman v. City of Le Claire*, 587 N.W.2d 232, 237–38 (Iowa 1998). To determine whether Mercado and the State established Mercado based the decision to keep the library open on considerations of public policy, a review of our recent decisions on this issue is necessary.

In *Bellman*, an accident involving an unattended golf cart killed a young boy during a school safety program. 617 N.W.2d at 15. Someone left the keys in the golf cart's ignition, and several unsupervised children went in the cart. *Id.* One child stepped on the gas pedal, which released the emergency break and activated the cart's electric motor. *Id.* The victim was pinned against the side of an ambulance by the golf cart resulting in his death. *Id.* In deciding whether the school district was immune from suit, we held discretionary function immunity only attaches to governmental decisions and actions based on policy considerations grounded on social, economic, or political reasons. *Id.* at 19. Because the teacher did not base her decision in supervising the children on such policy considerations, we concluded the school district was not immune. *Id.*

In *Doe v. Cedar Rapids Community School District*, mothers on behalf of three female students brought an action against a school district for vicarious liability and

for the negligent hiring, retention, and supervision of a teacher who allegedly engaged in improper sexual conduct with the three female students. 652 N.W.2d 439, 440 (Iowa 2002). We concluded, "the school's judgment concerning this teacher did not involve the permissible exercise of policy judgment." *Id.* at 444. We further noted the school failed to show any social, political, or economic factors at the heart of the decision to hire, retain, and supervise a particular teacher entitling the decision to protection from judicial review. *Id.* at 445. The decisions made in supervising the teacher were merely ad hoc decisions based on the circumstances existing at the time the school made the decisions. *Id.*

In *Ette,* we once again held the discretionary function immunity was not available for a school district. 656 N.W.2d at 70. The controlling question presented in this case was whether the school's decision to send a student home from Texas alone on a long bus trip for a violation of school rules was a judgment call driven by social, economic, or political concerns. *Id.* at 68. We held it was not, because under the unique facts of the case to do so would nullify the school's duty to supervise this particular student and protect him from reasonably foreseeable risks. *Id.* at 69.

Similarly, in *Madden v. City of Eldridge,* we held the city was not entitled to discretionary function immunity for failing to inspect an apartment building ceiling that collapsed causing the death of a tenant. 661 N.W.2d 134, 135 (Iowa 2003). We held while safety could be a legitimate policy consideration under certain circumstances, there was no evidence in the record to suggest the building inspector engaged in the required policy analysis before he decided not to inspect drywall. *Id.* at 139–40 (stating "[a]n immune governmental function is 'one that weighs competing ideals in order to promote those concerns of paramount importance over the less essential, opposing values' " (citations omitted)). We concluded the building inspector made an "ad hoc decision, tailored to the particular circumstances before him at the final inspection." *Id.* at 140.

In *Graber v. City of Ankeny,* the plaintiff, who was injured in an intersection collision, brought an action against the city for failing to properly set the timing of the traffic signals. 656 N.W.2d 157, 159–60 (Iowa 2003). We held the city was not immune based on the discretionary function exception. *Id.* at 166. We determined there was no evidence anyone of authority balanced any priorities of competing importance. *Id.* We stated, "[t]he mere existence of a sweeping safety consideration does not catapult the city's actions into the zone of immunity for decisions based upon social, economic, or political policy." *Id.* at 165.

In *Messerschmidt v. City of Sioux City,* a drunk driver struck and injured the plaintiff. 654 N.W.2d 879, 880–81 (Iowa 2002). The plaintiff brought a negligence action against the city alleging the city improperly removed a road barricade. *Id.* at 881. The city claimed it was immune from liability under the discretionary function immunity exception. *Id.* After deciding the first prong of the test was satisfied, we then determined the challenged action did not involve policy-making decisions and significant judgment. *Id.* at 882. Further, we concluded the city had "not met its burden to prove considerations based on social, economic, or political policy were involved in its decision to take the barricade down." *Id.*

Finally, in *Schmitz* we once again found the discretionary immunity exception did not protect the city's decision to add an asphalt overlay to a bike trail without raising the shoulders or grinding off the old

asphalt to prevent a one and one-half inch drop-off. 682 N.W.2d at 76. Specifically, we concluded the

> city produced no evidence that the choice it made with respect to whether the overlay should be done with or without grading of the accompanying shoulders was the sort of decision that the discretionary function immunity intends to protect, i.e., a decision weighing "social, economic, or political policies."

*Id.*

■ The common thread running through all these decisions defeating the discretionary function immunity was the record in each of these cases did not show the governmental entity based its actions on the required policy considerations, as distinguished from an action arising out of the day-to-day activities of the business of government. Unless a governmental entity can demonstrate that when it exercised its judgment, it genuinely could have considered and balanced factors supported by social, economic, or political policies, we will not recognize the discretionary function immunity. *Graber*, 656 N.W.2d at 165.

Applying this standard to the present case, we think the district court was correct in concluding Mercado and the State were entitled to immunity under the discretionary function exception. Our review of the record reveals the university had a policy to continue the normal hours of operation for the library during periods of severe weather. The purpose of keeping the library open was to afford the maximum opportunity for students and staff to utilize the library facilities. Keeping the library open furthered the public policy of providing the best college education to its students at a reasonable cost. Persons who desired to use the library for studying or research needed to count on the fact the library would be available to them during its normal hours of operation, except when it would be impossible to keep it open those hours.

Mercado's decision not to close the library was consistent with the university's policy to keep the library open during periods of severe weather. Although she did have the authority to close the library if the conditions made it impossible to keep it open, she considered and balanced the same factors used by the university when it formulated its policy. Before Mercado made the decision to keep the library open, she queried the staff on how many persons were using the library facilities. She also ascertained whether there would be sufficient personnel to staff the library if it remained open. She then weighed the number of persons using the library, the adequacy of the staff, and the knowledge that if the weather conditions deteriorated further she could have closed the library against the weather conditions as reported to her by her staff. Balancing all these considerations, she made the decision to keep the library open during its normal hours of operation in spite of the weather and allow the faculty, staff, and students to make their own decision as to whether they wanted to remain in the library that evening. People who were not in the library at the time of Mercado's decision were free to come to the library to study or find an alternate place of study if they felt the weather prohibited them from making the trip to the library. People in the library were free to leave the library upon learning of the weather condition from other students, weather reports available to the users on the internet, or by looking outside and observing the weather conditions first hand. The evidence confirms people entered and exited the library, without incident, after Mercado made the decision to keep the library open.

Thus, Mercado not only could have considered and balanced the factors supported by public policy, but did engage in the required public policy analysis before deciding to continue the normal hours of operation for the library during periods of severe weather. Under these circumstances, Mercado and the State are entitled to immunity for keeping the library open that evening under the discretionary function exception.

### V. Did the District Court Err in Instructing the Jury?

 The district court instructed the jury on the issue of the State's fault on Anderson's premises liability claim as follows:

The plaintiff must prove all of the following propositions:

1. The defendant knew or in the exercise of reasonable care should have known of a condition on the premises and that it involved an unreasonable risk of injury to a person in the plaintiff's position.

2. The defendant knew or in the exercise of reasonable care should have known:

a. the plaintiff would not discover the condition,

OR

b the plaintiff would not realize the condition presented an unreasonable risk of injury,

OR

c. the plaintiff would not protect herself from the condition.

3. The defendant was negligent in:

a. failing to use reasonable care to determine a hazardous condition at the entrance/exit to the Rod Library.

OR

b. failing to make the Rod Library entrance/exit reasonably safe after it knew of a hazardous condition.

OR

c. failing to give warning of a hazardous condition to the entrance/exit of the Rod Library and the risks involved in exiting the building.

4. The negligence was a proximate cause of the plaintiff's damage.

5. The nature and extent of damage.

If the plaintiff has failed to prove any of these propositions, the plaintiff is not entitled to damages. If the plaintiff has proved all of these propositions, then you will consider the defense of comparative fault as explained in Instruction No. 17.

*See Wieseler v. Sisters of Mercy Health Corp.,* 540 N.W.2d 445, 450 (Iowa 1995).

Anderson objected to the instruction and claimed the court should have instructed the jury that the possessor of land must exercise reasonable care under all the circumstances existing at the time and place of the injury for the protection of lawful entrants. In making this objection and requesting an instruction defining the possessor's duty in terms of reasonable care, Anderson relied on *Sheets v. Ritt, Ritt, & Ritt, Inc.,* 581 N.W.2d 602, 606 (Iowa 1998). The district court overruled the objection on the ground the instruction properly instructed the jury under the present state of the law.

The court, being evenly divided on the jury instruction issue, declares the decision of the district court on this issue is affirmed by operation of law. *See* Iowa

**368**

Code § 602.4107 (2003).[1]

### VI. Disposition.

We agree with the district court that Mercado and Anderson are immune from liability under the discretionary function exception for failing to close the library due to the weather conditions. The court, being evenly divided on the jury instruction issue, declares the decision of the district court on this issue is affirmed by operation of law.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

STREIT, J., concurs specially and LARSON, J., takes no part.

STREIT, Justice (concurring specially).

I concur in the result concerning the discretionary function immunity issue but write separately. I would not reach the discretionary function immunity issue because the defendants did not have a duty to close the library nor has proximate cause been shown. Although the majority rightly does not reach the duty or proximate cause issues because the defendants have not preserved them for our review, this case does not endorse the proposition that a premise open to the public, such as a library, shopping center, or movie theatre, must close its doors lest someone coming or going suffers a mishap. *See Sorci v. Iowa Dist. Ct.*, 671 N.W.2d 482, 489 (Iowa 2003) (setting forth basic error preservation principles).

---

1. Carter, Ternus, and Cady, JJ., would affirm the decision of the district court on the jury instruction issue; Lavorato, C.J., and Streit, and Wiggins, JJ., would reverse the decision of the district court on the jury instruction issue.