MANSFIELD, Justice
(concurring in part and dissenting in part).
I concur in part and dissent in part. I would find that Officer Walston’s response to the “verbal altercation” involved an exercise of discretion for which the State is immune from suit under Iowa Code section 669.14(1) (2005).
First, I believe the facts are clear that prison regulations gave Officer Walston discretion in responding to the prisoner argument that occurred during the breakfast turnout. As noted by the majority, Kevin Walker criticizes Officer Walston’s *568 job performance in six different ways. However, the majority can point to only one area in which Walker conceivably did not have discretion, that is, the requirement that “a serious threat to the safety and order of the employees, offenders, or property of an institution shall be reported by the employee observing the incident.” But even here, the majority notes that Walker did file a report, and the regulations do not state how promptly a report has to be filed. Unsurprisingly, in this instance, the report concerning the incident did not get filed before Walker was struck in the gym around 8:15 a.m. the same morning. In short, this part of the litigation involved an effort to second-guess a correctional officer’s exercise of judgment.
Having found that Officer Walston was exercising discretion in how he managed this inmate-to-inmate confrontation, I would find the State immune from suit relating to his acts or omissions. I see no reason why Iowa’s discretionary function exception cannot apply to “decisions made by the correctional staff in the supervision of inmates.” Iowa Code section 669.14(1) is generally worded. It provides the State shall be immune from tort liability “based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.” Iowa Code § 669.14(1). Thus, under the statute, the individual exercising discretion can be any state “employee,” including someone performing the difficult and demanding job of a correctional officer.
Iowa Code section 669.14(1) is directly modeled after the discretionary function exception in the Federal Tort Claims Act. See 28 U.S.C.A. § 2680(a) (West, Westlaw through P.L. 112-24 approved July 26, 2011). As noted by the majority, there are many federal precedents applying the federal discretionary function exception to claims brought by prison inmates against prison staff.
The great weight of the case law suggests that if a decision regarding the protection, safety, and classification of prisoners is discretionary (i.e., there are no mandatory directives), then such a decision is grounded in public policy and the discretionary function exception applies.
Sledge v. United States, 723 F.Supp.2d 87, 96-97 (D.D.C.2010) (citing numerous cases).
This outcome follows from the United States Supreme Court’s decision in United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). There, the Supreme Court held that, if a regulatory scheme affords discretion and the challenged actions can be said to be grounded in the policy of the regulatory scheme, the discretionary function exception applies. Gaubert, 499 U.S. at 324-25, 111 S.Ct. at 1274-75, 113 L.Ed.2d at 347-48. The nature of the conduct, rather than the status of the actor, governs whether the exception applies. Id. at 322, 111 S.Ct. at 1273, 113 L.Ed.2d at 346. Thus, for example, if a regulation allows for discretion in responding to a specific prison situation and the prison official’s response can be said to be related to legitimate prison policy considerations, the discretionary exception function applies and the government is immune from suit. If this case were in federal court concerning an incident that occurred in federal prison, I have little doubt that Walker would be unable to sue over Officer Walston’s alleged acts and omissions.
Today’s decision, however, limits the availability of the discretionary function exception to situations in which the decision involved the actual “evaluation of *569 broad public policy factors” or the “weighting of] competing ideals.” This approach effectively transforms the discretionary function exception into an elites-only exemption. Correctional officers are not such an elite. They perform a dangerous, stressful, but nonetheless discretion-filled job that does not allow them the luxury of pondering broad public policy implications or weighing competing ideals.
I think Gaubert is a sensible construction of the statutory language and ought to be the rule in Iowa. In Goodman v. City of Le Claire, 587 N.W.2d 232, 238 (Iowa 1998), our court endorsed the Gaubert standard. We expressly disavowed earlier case law “holding that the discretionary function exception does not reach any decisions made at the operational level,” such as prison guards. Goodman, 587 N.W.2d at 238.
Just last year, we reiterated the importance of federal precedent in this area. We said, “As the immunity for discretionary functions in our statute has its genesis in the federal tort claims act, we have been guided by federal decisions applying the doctrine.” Schneider v. State, 789 N.W.2d 138, 146 (Iowa 2010). We have made similar statements before many times. See, e.g., Ette ex rel. Ette v. Linn-Mar Cmty. Sch. Dist., 656 N.W.2d 62, 67 (Iowa 2002) (“Because the discretionary function exception has its genesis in the federal tort claims act, we have been guided by federal decisions applying its mandate.”); Shelton v. State, 644 N.W.2d 27, 30 (Iowa 2002) (“The Tort Claims Act is especially appropriate for applying the sometimes criticized but familiar rule that we are guided by federal decisions interpreting federal statutes on which our own statutes are modeled.”); Goodman, 587 N.W.2d at 236 (“We have recognized that the legislature intended the Iowa State Tort Claims Act to have the same effect as the Federal Tort Claims Act because the Iowa act is modeled after the federal act. For this reason, we have given great weight to relevant federal decisions interpreting the federal act.” (Citation omitted.)); Butler v. State, 336 N.W.2d 416, 419 (Iowa 1983) (The state discretionary function exception is “identical to the discretionary function exception of the Federal Tort Claims Act, and we are aided by federal interpretations of that provision.” (Citation omitted.)); see also Adam v. Mount Pleasant Bank & Trust Co., 340 N.W.2d 251, 252 (Iowa 1983) (“Because our statute is based on the federal Tort Claims Act, we assume our legislature intended it to have the same meaning as the federal statute.”); Hubbard v. State, 163 N.W.2d 904, 911 (Iowa 1969) (same).
I agree that in some decisions since Goodman we seem to have followed a non-Gaubertian approach to the discretionary function exception. That approach, as the majority accurately explains, bears more of a resemblance to Justice Scalia’s separate opinion in Gaubert. See Anderson v. State, 692 N.W.2d 360, 366-67 (Iowa 2005); Madden v. City of Eldridge, 661 N.W.2d 134, 139-40 (Iowa 2003); Graber v. City of Ankeny, 656 N.W.2d 157, 165-66 (Iowa 2003); Messerschmidt v. City of Sioux City, 654 N.W.2d 879, 882-83 (Iowa 2002). That approach also arguably revives the concept that decisions made at the operational level cannot be subject to the discretionary function exception — a principle we said we were discarding in Goodman, 587 N.W.2d at 238.
Yet, in none of our prior cases have we said we were departing from Gaubert or overruling Goodman. I would not take that step today. Rather, I would continue to follow Gaubert and Goodman and apply them to the prison conditions at issue in this case.
*570 Accordingly, I would find that Officer Walston was exercising prison-related discretion when he allegedly did not take sufficient steps to protect Walker from a threat. Officer Walston’s testimony describes the prison policy considerations that entered into his decisions:
[M]ost people, when they get loud in the middle of the day room so it draws your attention to the problem, most people— not all, as you say — are looking for an out. They’re looking for the CO to become involved so they don’t have to come to blows. That — that’s the way it works around here a lot of times.
[[Image here]]
They want you to get involved to say, hey, you need to knock that off. There ain’t going to be any fighting here. I got my eyes on you. I’m watching you. Don’t — don’t keep going on. And that gives everybody an easy out. So they don’t have to lose face to their peers inside here....
[[Image here]]
... [TJhat’s the first continuum of how you deal with it. You approach them. It’s your presence. You talk to them. You tell them. You see how it’s going to work out. That’s how it progresses.
It doesn’t always start from one and go to like one, two, three, four on a policy order in the way it’s presented. Sometimes you have to skip over if it’s— if it’s turned about, you have to go to a higher degree right off the bat, but on a normal progression, it’s just like minor reports. You’d go with them. You tell them not to do it. You give them a verbal warning. You give them the written. Make them do a responsibility report.
It all goes up the line unless they just don’t listen and you have to go to a higher degree. You don’t want to start at the top. You have to have somewhere to go.
Of course, even under my colleagues’ approach, the fact finder may well decide that Officer Walston acted reasonably and thus reject Walker’s claim. However, in adopting section 669.14(1), I believe the legislature intended to provide an immunity for these kinds of judgment calls by a correctional officer.
I agree with my colleagues’ conclusion that the discretionary function exception does not apply to Walker’s allegation that Activity Specialists Bogdanski and Stipe failed to properly supervise the exercise turnout at which Walker was actually struck and injured. This allegation appears to involve garden-variety negligence rather than an exercise of prison-related discretion. I also agree that the intentional tort exception does not apply here and thus join part III. C. of the majority opinion.
For the foregoing reasons, I concur in part and dissent in part.
WATERMAN, J., joins this concurrence in part and dissent in part.