# IN THE COURT OF APPEALS OF IOWA

No. 21-0998
Filed June 29, 2022

**PAUL H. MATTHEW and DEBORAH ANN MATTHEW, as Administrators of the ESTATE OF DESHIA MARIE MATTHEW, Deceased,**

Plaintiffs-Appellants,

**vs.**

**STATE OF IOWA,**
Defendant-Appellee.
_____

Appeal from the Iowa District Court for Washington County, Crystal S. Cronk, Judge.

Estate administrators bringing a wrongful-death action against the State appeal the district court's grant of summary judgment to the State based on discretionary-function immunity. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, and John C. Bush, Michael K. Bush, and William Bush of Bush, Motto, Creen, Koury & Halligan, Davenport, for appellant.

Thomas J. Miller, Attorney General, and Samuel P. Langholz and Sharon Wegner, Assistant Attorneys General, Des Moines, for appellee.

Heard by Bower, C.J., and Schumacher and Ahlers, JJ.

**AHLERS, Judge.**

Deshia Matthew died in a house fire in 2016. Her parents were appointed as administrators of her estate, and they sued several parties seeking to recover damages resulting from Deshia's death by claiming the parties were negligent. One of the parties sued was the State of Iowa. The State sought summary judgment based on a claim of discretionary-function immunity. The district court granted the State's motion for summary judgment. The estate administrators appeal the district court's ruling.

## I.      Factual and Procedural Background

At the time relevant to this appeal, Deshia was twenty-two years old and intellectually disabled. Due to her disability, Deshia received home- and community-based services (HCBS) under Iowa's Medicaid waiver programs. The services were intended to help Deshia live independently in a residence of her choice rather than in an institution. Deshia lived with three other intellectually disabled individuals in a home privately owned by Potratz Farms, Inc. (Potratz). Although owned by Potratz, the house was operated by Optimae LifeServices, Inc. (Optimae). Optimae was certified by the Iowa Department of Human Services (DHS), as administrator of Iowa's Medicaid program, to provide services under the waiver program, and Optimae provided services and staffing on site twenty-four hours per day.

An investigation of the fire that resulted in Deshia's death revealed that the house did not comply with fire-safety standards. The administrators of Deshia's estate sued Potratz and Optimae, seeking damages based on negligence. They later added the DHS as a party. After settling with Potratz and Optimae, the

administrators amended their claim to pursue only the State. The State moved for summary judgment based on its claim that it was entitled to the immunity recognized for discretionary functions under Iowa Code section 669.14(1) (2016). The district court granted the motion. The administrators appeal. They contend that the State is not entitled to immunity because the action at issue was not discretionary and not of the type that discretionary-function immunity was designed to shield.

## II.    Standard of Review

Summary judgment rulings are reviewed for correction of errors at law. *Kostoglanis v. Yates*, 956 N.W.2d 157, 158 (Iowa 2021). Summary judgment is properly granted when the moving party establishes that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Id.* at 158–59. Evidence is viewed in the light most favorable to the nonmoving party. *Id.* at 159.

## III.   Discretionary-Function-Immunity Standards

We are called upon to assess the scope of the statutory waiver of sovereign immunity. Our state began from a position of complete immunity, and, prior to the enactment of the Iowa Tort Claims Act (ITCA)—codified as Iowa Code chapter 669—"tort suits could not be brought against the state because such suits were prohibited by the doctrine of sovereign immunity." *Wagner v. State*, 952 N.W.2d 843, 856 (Iowa 2020) (citation omitted). With the adoption of the ITCA, the State may now be sued in tort, but only in the manner and to the extent to which the legislature has granted consent to such suits. *Id.* The ITCA makes it clear that the State's immunity from suit and liability is waived, but only to the extent provided in chapter 669. Iowa Code § 669.4(3) ("The immunity of the state from suit and

liability is waived to the extent provided in this chapter."). Iowa Code section 669.14 lists exceptions to the State's waiver of its sovereign immunity. One of those exceptions is for discretionary functions. Under section 669.14(1), "[t]he State does not waive its sovereign immunity for actions 'based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or an employee of the state, whether or not the discretion be abused.'" *Anderson v. State*, 692 N.W.2d 360, 364 (Iowa 2005) (quoting Iowa Code § 669.14(1)).

To determine whether a challenged action is cloaked with immunity as a discretionary function, we use a two-prong test. *Id.* First, we determine whether the action is a matter of choice. *Id.* Conduct is not discretionary, and thus does not trigger discretionary-function immunity, if it does not involve judgment or choice. *See Schneider v. State*, 789 N.W.2d 138, 147 (Iowa 2010) (holding that statutory and regulatory provisions prevented a state employee from ignoring them, so discretionary-function immunity was not available because "there was no such choice available"). Second, we determine whether the choice or judgment "is of the kind the discretionary function exception was designed to shield." *Anderson*, 692 N.W.2d at 364. To meet this prong, the State must show "that when it exercised its judgment, it genuinely could have considered and balanced factors supported by social, economic, or political policies," rather than merely making "day-to-day" decisions. *Id.* at 366.

## IV.    Application of the Discretionary-Function-Immunity Standards

To begin the analysis, we start by determining the conduct at issue. *See Walker v. State*, 801 N.W.2d 548, 556 (Iowa 2011) ("The first step in our analysis

is to determine the exact conduct that is at issue."). The estate administrators contend the action at issue is the State's failure to ensure that the service provider, Optimae, complied with applicable fire codes and safety regulations. They contend this failure resulted in Deshia's death. The estate administrators rely on the principle that, if a statute, regulation, or policy requires a State employee to follow a course of action, the discretionary-function exception does not immunize the State from liability for failure to take that action. *See id.* at 555 ("The discretionary function exception is inapplicable when a statute, regulation, or policy requires a course of action for an employee to follow."). So, we must determine whether there are applicable rules that dictate the level of oversight the State must expend over supported-community-living service providers such as Optimae.

### A. The First Prong: Exercise of Choice or Judgment

The Iowa Medicaid program provides medical assistance to, as relevant here, disabled Iowans. *See generally* Iowa Code ch. 249A (detailing eligibility for and administration of medical assistance). Medicaid in Iowa is administered by the DHS. Iowa Code §§ 217.1, 249A.4. In order to keep individuals who would otherwise require care in a medical institution living in their homes or communities, the DHS established an HCBS intellectual-disability-waiver program as part of its obligation to administer Medicaid. Iowa Admin. Code rs. 441–83.60 to .80. As applicable here, the program may provide supported-community-living and day-habilitation services. *Id.* r. 441–83.66. Because the HCBS waiver program is federally based, it is subject to federal law. *See generally* 42 U.S.C. § 1396n; 42 C.F.R. pt. 441. For the HCBS program to receive federal funding, the DHS must provide satisfactory assurances that, in part, "necessary safeguards (including

adequate standards for provider participation) have been taken to protect the health and welfare of individuals provided services under the waiver." 42 U.S.C. § 1396n(c)(2)(A). Federal regulations require "[a]ssurance that necessary safeguards have been taken to protect the health and welfare of the beneficiaries of the services." 42 C.F.R. § 441.302(a). The safeguards must include:

> (1) Adequate standards for all types of providers that provide services under the waiver;
> (2) Assurance that the standards of any State licensure or certification requirements are met for services or for individuals furnishing services that are provided under the waiver; and
> (3) Assurance that all facilities covered by section 1616(e) of the Act, in which home and community-based services will be provided, are in compliance with applicable State standards that meet the requirements of 45 CFR part 1397 for board and care facilities.
> (4) Assurance that the State is able to meet the unique service needs of the individuals when the State elects to serve more than one target group under a single waiver, as specified in § 441.301(b)(6).
> (i) On an annual basis the State will include in the quality section of the CMS-372 form (or any successor form designated by CMS) data that indicates the State continues to serve multiple target groups in the single waiver and that a single target group is not being prioritized to the detriment of other groups.
> (5) Assurance that services are provided in home and community based settings, as specified in § 441.301(c)(4).

*Id.*

At this point in the analysis, the State contends the estate administrators did not preserve error on their arguments. Specifically, the State claims the estate administrators did not rely on particular statutes, regulations, or policies in arguing to the district court that the first prong of the discretionary-function-immunity test was not met. On our review, we find their arguments were sufficiently raised below and decided by the district court so that we may reach the merits of the estate administrators' argument.

Turning to the merits, the estate administrators contend the State's action here was not a matter of discretion, as the State failed to comply with applicable state and federal regulations. The estate administrators first argue that 42 C.F.R. section 441.302(a) and 42 U.S.C. section 1396n(c)(2)(A), and by extension 42 C.F.R. sections 441.301(c)(4)(vi)(A) and 441.302, require the State to conduct inspections of these homes to ensure compliance with fire-safety standards and to otherwise oversee operation of the homes. These regulations, however, provide only very general requirements for assurances states must make to the federal government in order to receive funding for HCBS programs. As the district court aptly noted in its summary judgment ruling,

> While [the estate administrators] do allege[] the State failed to provide adequate oversight, they do not make any argument that the home in which Deshia lived in Washington was under the scope of [42 C.F.R. section 441.302(a)(3)]. Apart from [the requirements of 42 C.F.R. section 441.302], the Federal regulation does not dictate what safeguards the State must take.

Because the cited requirements are so broad, we cannot determine that there is an applicable federal regulation that requires the State to provide inspections of unlicensed homes, such as the one Deshia lived in, to ensure fire-safety compliance or to oversee operation of the homes in the manner claimed by the estate administrators.

The estate administrators further contend that the Iowa Administrative Code, as it relates to HCBS providers under the waiver program, requires the level of oversight they urge is necessary. *See* Iowa Admin. Code r. 441–77.37 (setting forth requirements for HCBS disability waiver service providers). Rule 441–77.37(10) and (13) sets forth the certification and re-certification process for HCBS

disability waiver service providers. Within these guidelines for service providers, there is no requirement that the State, at any point, conduct on-site inspection of homes where HCBS programs are being provided, even during the certification and recertification processes.

The rules and regulations, both state and federal, cited by the estate administrators are general and broad, and they do not require the State to conduct the on-site inspections or any other oversight actions the administrators contend are required. Rather, the rules and regulations provide ample room for the State to use its discretion in deciding what oversight to provide to these supported-community-living service providers. Because there is no statute, regulation, or policy with which the State failed to comply, we determine the first prong of the discretionary-function-immunity analysis is satisfied. *See Walker*, 801 N.W.2d at 555.

### B.  The Second Prong: Decisions Based on Policy

We next move to the second prong of the discretionary-function-immunity test. Our supreme court followed the United States Supreme Court's lead by holding that the discretionary-function exception "protects only governmental actions and decisions based on considerations of public policy." *Anderson*, 692 N.W.2d at 364 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536–37 (1988)). In *Walker*, our supreme court summarized the requirements for satisfaction of the second prong by noting the record must demonstrate

> the governmental entity based its actions on the required policy considerations, as distinguished from an action arising out of the day-to-day activities of the business of government. Unless a governmental entity can demonstrate that when it exercised its judgment, it genuinely could have considered and balanced factors

supported by social, economic, or political policies, we will not recognize the discretionary function immunity.

801 N.W.2d at 561 (quoting *Anderson*, 692 N.W.2d at 366).

The estate administrators argue that the State failed to identify any social, economic, or political considerations that drove its decision regarding providing oversight of HCBS providers. Therefore, the estate administrators argue, the State failed to satisfy the second prong of the discretionary-function-immunity test. We are not persuaded by the estate administrators' claim. The standard with which courts must analyze the second prong is not based on whether the State actually made its decisions based in policy; rather, the standard is whether it could have made its decisions based on policy. Our supreme court explained this principle as follows:

> In other words, an immune governmental action is one that weighs competing ideals in order to promote those concerns of paramount importance over the less essential, opposing values. Whether or not the [governmental actor] actually made its decision with policy considerations in mind is not determinative. Instead, the [governmental entity's] actions . . . must be amenable to a policy-based analysis. The circumstances must show the [entity] legitimately could have considered social, economic, or political policies when making judgments as to [the conduct at issue].

*Walker*, 801 N.W.2d at 561–62 (quoting *Graber v. City of Ankeny*, 656 N.W.2d 157, 165 (Iowa 2003) (first four alterations in original)). Applying this principle, we agree with the following analysis made by the district court:

> [T]he Court finds that the State's decision of which safety measures to require is the type of policy-related judgment the discretionary function immunity was designed to shield. The State could have considered and balanced factors such as its commitment to assisting individuals with intellectual disabilities, which providers to contract with, the State's authority to regulate residences owned by private individuals, and the economic and administrative cost of further regulation and ensuring compliance. The State could have chosen

to require further safeguards to be in place or conduct inspections as the Plaintiffs put forward; however, discretionary function immunity analysis does not permit the Court to critique the State's decisions in the guise of judicial review. Here, the State has carried its burden to show that the State's judgment in how to regulate HCBS waiver programs is a matter of choice on behalf of the government, and the decision is based on policy and is the kind of discretionary function that the immunity was designed to shield. Therefore, the Court determines the State is immune under Iowa Code section 669.14(1).

Accordingly, we agree with the district court's finding that the second prong of the discretionary-function-immunity test has been established, and the State was properly granted summary judgment.

## V.    Conclusion

Both prongs of the discretionary-function-immunity test have been met. Accordingly, we affirm the district court's decision granting summary judgment in favor of the State on the basis that it has immunity in this matter.

**AFFIRMED.**